## KERNER v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. July 6, 1923.)

No. 3005.

**Conspiracy ☞48—Evidence held to warrant submission of case to jury.**

> Evidence that defendant, charged with conspiracy to steal whisky owned by the government, with others, went with trucks in the night to the warehouse where the whisky was stored, and on being admitted by the watchman paid him a sum on account and started to go to the rooms in which the whisky was stored, carrying gloves, steel cutters to cut the bolts of the locks, and bolts and locks to replace those removed, *held* sufficient to warrant submission of the case to the jury.

In Error to the District of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Criminal prosecution by the United States against Joseph Kerner. Judgment of conviction, and defendant brings error. Affirmed.

Kessler & Kessler, of Newark, N. J., for plaintiff in error.

Walter G. Winne, of Hackensack, N. J., for the United States.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In this case, the defendant, Kerner, was convicted on an indictment charging him and others with conspiring to smuggle and steal alcoholic liquor belonging to the United States from a storage warehouse in the city of Trenton, N. J. On the entry of judgment and imposition of sentence, he sued out this writ of error and the several questions involved finally center on the inquiry whether, under the proofs, the case should have been allowed to go to the jury.

The proofs tended to show: That certain liquors had been stored by the government in a public storage warehouse in the city of Trenton, N. J., and that one Freudemacher was employed as a guard in such building by the marshal. On the night of July 6, 1922, the defendant, with his brother, Max, and a third party, named Lake, came to the warehouse, knocked, and was admitted. Information of their intended visit had evidently come to the knowledge of the government authorities, as several officials were secreted about the building to observe what happened. On their admission, the defendant was introduced to Freudemacher by the former's brother, Max Kerner. Thereupon the defendant said to Freudemacher, "Now, where is the whisky?" and was told it was on the eighth floor. The parties then went into the office, and Freudemacher told the three that he needed some money, as he had a note coming due the next day, and asked for $50 on account. That Joseph Kerner, the defendant, then took some money from his own pocket, but concluded not to give it to him, saying: "Well, if I give you $50, it will make me too short." Thereupon Max Kerner, in defendant's presence, gave Freudemacher a check for $50, which check was produced by Freudemacher and given in evidence in corroboration of his story. That Joseph Kerner then said they would go out and look at the trucks, "and then we will go up and see where

---

the whisky is." He also, at that time, said: "Now, I don't want anything but rye this time, because rye sells better than any other kind, and you show us the room where the rye is." Following this, Joseph Kerner examined the trucks, tried the switch, pronounced them all right, and then said: "We will go up stairs and see where the whisky is." The party then went by the elevator to the eighth floor, where Freudemacher showed them three rooms where the rye whisky was stored. Coming up on the elevator, Max Kerner furnished the party with white gloves to conceal finger prints, and as the rooms where the whisky was stored were locked, Joseph Kerner said the locks should be knocked off the doors, but Max Kerner suggested the bolts should be cut, and that one Linowitz had a bolt cutter. It was evident the plan was to cut the locks and replace them with others, as Max Kerner, while coming up on the elevator, had shown Freudemacher a lock, and compared it with the locks on the doors when he got to the eighth floor.

The proofs showed that both Max and Joseph asked which rooms the best rye whisky was in, inquired what the brands were, stated that was the room they wanted first, said the whisky was to be taken away in Manning's trucks, that it was to be taken to Joseph Kerner's farm, and they both went down to let Linowitz, who had the bolt cutter, in. Freudemacher testified that he was to get $25,000, and that "Max Kerner and Joseph Kerner said I would have plenty of money in the morning, and I did not need any money that night; that I would be a rich man the next morning, if I go out on the farm and collect my share of the proceeds." When the party reached the first floor, they were confronted by the government officials, who placed the Kerners and Lake under arrest. There was also evidence that in Joseph Kerner's own car, which was standing half a block from the warehouse, were found four pairs of gloves, and that on one of the three in the party was found a pair of steel cutters concealed under his sweater. The testimony of Freudemacher, who was acting under instructions from the Department of Justice, was corroborated by other witnesses.

Under these proofs, it is clear to us that no error was committed by the court in refusing to take the case from the jury. Whatever the motives, inducements, or representations made to Kerner and his associates, there can be no question that on the night in question he and they came to the warehouse in question with the avowed purpose and intent to steal the rye whisky which was stored therein by the government and under charge of its agents. Their purpose to bribe the guard was avowed, and the two Kerners proceeded jointly to carry out that purpose. They were provided, through their associate, with the tools for violently entering the storage rooms by using a bolt cutter, with locks to replace the broken ones, and gloves to conceal their fingerprint identity.

Under such proofs, the question of Joseph Kerner's guilt was for the jury.